Robert L. Case, Plaintiff in Error, v. The People of the State of New York, Defendant in Error.

Upon the trial of an indictment for perjury in swearing to an affidavit, which purported to have been sworn to before a notary public, the notary, as a witness for the prosecution, after looking at the affidavit, testified that it was sworn to before him, and that it was subscribed by him as notary. On cross-examination, however, he testified that he had no recollection of the transaction, and testified to the verification from seeing his signature to it as notary. The prisoner testified, in his own behalf, that he never took the oath; two other witnesses testified that the affidavit was signed in the office of the company, of which the prisoner was president, was not sworn to, but was taken by a porter to the notary to be certified, and was so certified in the absence of the prisoner; the porter testified that he took the affidavit to the office of the notary, who wrote his name and attached his seal, and that witness then returned it to the office of the company. *Held*, that a refusal of the court to direct an acquittal was error; that proof of the taking of the oath was requisite, independent of the *jurat*; and that, assuming that the evidence given on the part of the prosecution, was *prima facie* sufficient, the proof, on the part of the prisoner, overcame it, and conclusively established that the affidavit was not sworn to.

*Case* v. *The People* (14 Hun, 503), reversed.

(Argued November 25, 1878; decided February 18, 1879.)

Error to the General Term of the Supreme Court, in the first judicial department, to review judgment affirming a judgment of the Court of Oyer and Terminer, in and for the city and county of New York, entered upon a verdict convicting the plaintiff in error of the crime of perjury. (Reported below, 14 Hun, 503.)

The perjury alleged in the indictment was in swearing to an affidavit attached to a statement, made, as required by law, by plaintiff in error, as president of the Security Life and Annuity Company, for the year 1875. The affidavit purported to have been sworn to before Moses B. McClay, notary public.

The further facts, pertinent to the question discussed, appear sufficiently in the opinion.

*Algernon S. Sullivan* and *Charles H. Winfield*, for plaintiff in error. To sustain a conviction, it was necessary to show that the oath had been legally administered and taken in due form of law. (*People* v. *Tuttle*, 36 N. Y., 431; *State* v. *Morris*, 9 N. H., 96; *Dodge* v. *State*, 4 Zab., 455; 2 R. S., 681, § 1.) To sustain a conviction, the evidence should not only be consistent with the prisoner's guilt, but inconsistent with any other rational conclusion. (*Stevens* v. *People*, 4 Park., 396; 10 N. Y., 549; *People* v. *Bennett*, 49 id., 137; *U. S.* v. *Douglass*, 2 Blatch., 207; *People* v. *Murray*, 41 Cal., 66; *Algheri* v. *State*, 25 Miss., 548; 1 Starkie on Ev., 510.)

*Benj. K. Phelps*, for defendant in error. The objection that the indictment did not sufficiently charge the oath to have been administered in due form of law was not well taken. (3 R. S. [Bank's 6th ed.], 1022; *Mason* v. *People*, 26 N. Y., 200; *People* v. *Powers*, 2 Seld., 50; *People* v. *Phelps*, 5 Wend., 9; *People* v. *Rynders*, 12 id., 425; *Charles* v. *People*, 1 N. Y., 180; *Fleming* v. *People*, 27 id., 329; *Tuttle* v. *People*, 36 id., 431; *Sanchez* v. *People*, 22 id., 150; *Kennedy* v. *People*, 39 id., 251; *Tomlinson* v. *People*, 5 Park. 313; *People* v. *Taylor* 3 Den., 91.)

MILLER, J. Numerous questions were raised upon the argument as to the validity of the conviction of the accused. Among others, and perhaps the most serious one arises upon the motion made by the prisoner's counsel, at the close of the testimony of the prosecution upon the trial of the indictment, to acquit the defendant, upon the ground of the insufficiency of the proof that the affidavit was made, upon which the perjury was assigned. The same motion was renewed at the close of the whole testimony, and the court were then requested to instruct the jury to acquit, on the ground that the oath was not administered to the defendant. Each of the motions was denied, and an exception taken to the several rulings of the judge in reference to the same.

If, as is urged, the oath was not administered, the allegation that the accused swore to the affidavit in the indictment was not proven; the evidence would not justify a conviction, and the court should have discharged the prisoner, by directing an acquittal. In order to determine accurately how the fact was, it is necessary to examine carefully the testimony appearing in the record before us, as to the oath having been administered by the notary to the accused. The notary, Maclay, who was sworn upon the trial, after looking at the affidavit, in response to a question put to him by the public prosecutor, whether the persons there indicated were sworn before him to the truth of the affidavit, and whether it was subscribed by him, as a notary public, answered in the affirmative. Upon his cross-examination, after stating that he could not remember the specific occasions on which he had taken affidavits, and the character of the affidavits taken by him, he stated that he had no particular recollection of this affidavit, except seeing his signature to it. He thought it was taken at the office, but he did not remember the place. He did not recollect positively any matter connected with it. That he testified to the verification from seeing his certificate to it as a notary public, and beyond that, had *no recollection* as to the place, or circumstances under which it was taken. He also stated that all affidavits were taken, with few exceptions, at the company's office in Pine street; but from the circumstance that the affidavits were usually taken in their office, with some exceptions, and that he was frequently down in the neighborhood, he argued that it was taken there. His examination elicited the fact that he was uncertain as to the place and circumstances, and that he could not positively or directly swear to the taking of the affidavit. In fact, it was mere conjecture, arising from the circumstance that his name was subscribed to it as a notary public.

Standing alone, the testimony of the notary was very loose, uncertain and unreliable. He does not swear to the material fact in the case, that he did administer the oath to

the accused ; and it is only for the reason that he finds his name attached to the jurat that he "thinks" and "argues," and it may be truly said, perhaps, that he *supposes*, that he took the affidavit. Such testimony is certainly entitled to but little consideration. The very fact that he hesitates, qualifies and limits his testimony, evinces that he had no confidence in the truth of the fact that he actually did take the affidavit. If he knew that he did, or even if he actually believed that such was the truth, there can be no doubt that he would have sworn to it directly. He fails to do this, and, in the absence of any other proof, and if the case stood on his testimony alone, it is, at least, exceedingly doubtful whether the evidence was sufficient to hold, as a matter of law, that proof had been given that the accused took the oath. Weighing such evidence by the rules which have been established by the decisions of the courts, and the principles of the common law, it was certainly very slight and uncertain.

The certificate which the notary had given, on its face, in connection with the testimony, raised a presumption, perhaps, that the officer had done his duty, and *prima facie* was barely enough to authorize such a conclusion. In view, however, of the fact that the officer himself, with the affidavit signed by him before him, refused to swear that he did administer the oath, this presumption was not very strong. While a presumption, arising from a given state of facts, may properly be indulged in favor of the performance by a public officer of an official duty, such presumption utterly fails, when the evidence shows that it is entirely unwarranted. In a case like this, there must be proof of the oath taken, independent of the notary's certificate, signature, seal and jurat. Assuming that the evidence was *prima facie* sufficient, the presumption arising from the testimony was liable to be rebutted by other testimony that the oath was not administered ; and we think the proof on behalf of the prisoner was entirely sufficient to overcome the evidence of the prosecution, and to establish that no oath ever was administered, and that the affidavit was not sworn to.

This position is sustained by the testimony of the accused, who positively swore that he never took the oath ; by the evidence of Allen and Wetmore, the vice-president and secretary of the company, each of whom testified that the affidavit was signed in the office of the company ; was not sworn to, but was taken to be certified, by the porter, Roberts, to the notary, and was so certified, in the absence of the accused. This testimony is supported by Roberts, the porter, who swears that he took the affidavit to Maclay's office, and Maclay wrote his name upon and put his seal on it, and the witness then took and returned it to the office of the company.

Whatever criticism may be made as to the credibility of the accused, or such witnesses as were charged with crime, in connection with the prisoner, there is nothing in the case which in any way impugns or discredits the testimony of Roberts ; and his statement is sustained by the evidence of Snyder, another witness, who testifies that when the reports were made up they were sent to Maclay for his signature and his notarial seal generally by the porter, Roberts, and returned as sent, certified by the notary. Maclay's evidence, as we have seen, does not contradict Roberts, in any respect, or the testimony of the other witnesses If the testimony was untrue, Maclay should have been called to contradict it. The prosecution failed to do this ; and in the absence of any evidence that the oath was taken, and the failure of Maclay to contradict the proof, it is clear, uncontradicted and conclusive that no oath was administered ; and it must, therefore, be assumed as established that Roberts told the truth, and is entitled to full credit and belief. In fact, that the other witnesses also, who are so strongly corroborated by his testimony, as well as the evidence of Maclay, and all the circumstances, were entitled to credit, in swearing that no oath was ever taken. While the motive of the notary, in thus sanctioning a loose, irregular and illegal mode of doing business of this kind, may be considered, it is easy to see that it may be accounted for, without ascribing to him any criminal intention.

As he never swore that the oath was administered by him, and was not recalled to contradict the testimony of Roberts and the other witnesses, showing the manner in which the certificate was made, the question as to his motive is entitled to but little weight; and it is not material whether the act was done from sheer recklessness, undue haste, or for any other reason. A careful consideration of the evidence leads to the conclusion that the prisoner never took the oath, and the court erred in refusing to direct the jury to render a verdict of acquittal, as should have been done at the close of the testimony. If we are correct in the views we have expressed, it is not important to consider the other questions presented on the argument, which are difficult and important, and the result must be that the conviction was wrong and should be reversed.

All concur, except FOLGER, J., dissenting.

Judgment reversed.