JOSEPH LEVY, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

*Arson in the first degree — tenement house — when properly charged in an indictment as the dwelling-house of any occupant.*

The plaintiff in error was indicted and convicted as an accessory before the fact to the crime of arson in the first degree. The fire was set in a five-story tenement-house, having a common entrance upon the street, and from a yard in the rear; upon the different stories the apartments of the tenants, consisting of several rooms, opened upon common halls; the plaintiff in error and his wife rented and lived in three rooms on the second floor. One Koenigsberg occupied, with his wife and two children, three rooms adjoining those of the plaintiff in error, but not directly communicating with them. The fire was set in the rooms of the plaintiff in error and burned portions thereof, but not to any extent the rooms occupied by Koenigsberg. There was no one in the rooms of the plaintiff in error when the fire was set, but there were in those of Koenigsberg. The indictment charged the principal with having, in the night time, set fire to and burned a certain dwelling-house of one Koenigsberg.

*Held,* that the indictment properly charged that the fire was set in the dwelling-house of Koenigsberg.

*Quære,* as to how far a judgment of conviction of the principal is conclusive evidence of his guilt, on the trial of an indictment against one charged with being an accessory, before the fact, to the crime.

WRIT OF ERROR to the Court of General Sessions of the city and county of New York, to review the conviction of the plaintiff in error of being an accessory, before the fact, to the crime of arson in the first degree.

*John O. Mott*, for the plaintiff in error.

*Daniel G. Rollins*, for the defendants in error.

DAVIS, P. J. :

The plaintiff in error was convicted of being an accessory, before the fact, to the crime of arson in the first degree. The conviction of the principals was proved by the production of the judgment record of the Court of Oyer and Terminer. After proving such conviction, the People were proceeding to give evidence tending to show the commission of the crime of arson in the first degree by the persons charged as principals in the indictment forming part of the judgment record, when the counsel for the prisoner objected to such evidence, in substance, on the ground that the record was conclusive on the prisoner, and that the People were only to establish, on this trial, that he was accessory to the crime. The court overruled the objection, and allowed the evidence to be given, and the prisoner's counsel duly excepted.

Evidence was then given tending to establish the guilt of the several persons named in the indictment contained in the record. It is not necessary to determine to what extent the judgment record is evidence against the prisoner, to establish the guilt of the accessory. It of course conclusively establishes that the person tried under the indictment set forth in the record had been convicted, but the question whether his guilt is conclusively established as against the person charged as accessory, who was not a party to the record, and had no opportunity to be heard upon the trial, is quite a different proposition. On looking into the evidence in this case given for the purpose of showing that the offence had been in fact committed, it is apparent that all of it was admissible with a view to show circumstances tending to establish the prisoner's guilt as accessory, and as it was clearly admissible for

that purpose, there was no error in receiving it, even if it were not necessary to have gone beyond the record for the purpose of proving the guilt of the persons convicted under the principal indictment. The exception was not therefore well taken.

It appears that the building, in which the fire was set, was a five-story tenement-house, known as No. 11 Ludlow street. The building had a common entrance in front from the street, and a like entrance from a yard in the rear. The front entrance led into a hall-way used in common by the tenants; and on the several stories of the building there were apartments consisting of several rooms with doors opening into common halls. These apartments it appears were occupied by a considerable number of persons, who severally rented them from the common owner. The prisoner had three rooms on the second floor of the building, in which he lived with his wife, having no other family.

One Isaac Koenigsberg occupied with his family, consisting of his wife and two children, three rooms adjoining those of the prisoner. There was no direct communication between Koenigsberg's and the prisoner's apartments. The fire was set in the rooms occupied by the prisoner, and it burned to some extent different portions of that room; but the rooms occupied by Koenigsberg were not burned to any extent. The indictment against the principals charged them with having on the 10th of November, 1878 in the night time, set fire to and burned a certain dwelling-house of one Isaac Koenigsberg, and that Isaac Koenigsberg was then and there within the said dwelling-house; and the indictment against the prisoner charged him with being accessory to that crime. It was objected on the trial that the proof did not support the indictment, inasmuch as there was no burning anywhere else than in the rooms of the prisoner himself, and that no person was in either of those rooms at the time of the fire, and that therefore there can be no conviction of the prisoner as accessory to arson in the first degree. This objection was over-ruled and an exception duly taken.

The statute defines arson in the first degree to be the willful setting fire to or burning in the night time, a dwelling-house in which there shall be at the time some human being; and it declares that every house or other edifice which shall have been

usually occupied by persons lodging therein, at night, shall be deemed the dwelling-house of any person so lodging therein.

We think the court below was correct in its construction of the statute. The tenement-house was a building divided into a large number of apartments separately occupied by several tenants, who held under distinct leases.

But this fact did not change its character as a single edifice within the meaning of the statute defining the crime of arson. For certain purposes each suite of apartments may properly be held to be the dwelling-house of the occupant, and so the Court of Appeals in *Mason* v. *People* held that the breaking of an outer door leading from a common hall-way into the apartments of any tenant for the purpose of committing a crime therein, was the breaking of the dwelling-house of such tenant, under the statute defining the crime of burglary. (*Mason* v. *The People*, 26 N. Y., 200.) But in defining the crime of arson in the first degree the Legislature intended to protect the whole building usually occupied by persons lodging therein at night, and all the occupants and lodgers therein without regard to the manner in which it may be used, or the number of occupants. Being a single edifice such building is a dwelling-house within the meaning of the statute of arson although by its interior arrangements it may be subdivided into separate apartments constituting the dwelling-houses of the occupants for certain other purposes under the law ; and we consider this construction to have been sustained, by the Court of Appeals, in *Shepherd* v. *The People* (19 N. Y., 537.)

In that case the prisoner was charged with the crime of arson in the first degree, in setting fire to a building belonging to himself. He and his wife occupied the second story of the building, which was reached by a staircase in the hall. One Christian Geyer occupied the lower part of the building for a shop, and one room for a bedroom, and he habitually lodged there and was asleep in his bedroom when the fire occurred. The indictment charged the prisoner with willfully setting fire to the dwelling-house of Geyer, and the court held that the building was properly laid as the dwelling-house of Geyer. The only difference between that case and the present is we think, in the number of apartments separately occupied. In that case there were but two

occupants of separate apartments, the one in the lower and the other on the second floor. In this case there were some twenty occupants of distinct apartments on several floors. The fact that the whole building was burned in Shepherd's case was not considered a material circumstance by the court, so far as relates to charging the offence under the indictment.

In *Mason* v. *The People*, the court did not refer to *Shepherd's Case*, and manifested no intention to overrule it. In *Dedieu* v. *The People* (22 N. Y., 158), the prisoner was charged with setting fire to a certain dwelling-house of Amelia Asselin, there being then and there, within the said dwelling-house, some human being. It appeared that the prisoner occupied apartments in the building No. 86 Leonard street, Mrs. Asselin, named in the indictment, and others occupying separately, other apartments in the building. The prisoner set fire to his own property in the apartments occupied by himself; but the fire was extinguished before any part of the building was burned.

DENIO, J., in delivering the opinion in that case, says : " The act imputed to the defendant was setting fire to the dwelling-house of Amelia Asselin, situated in the Ninth ward of the city of New York. The house was properly enough laid as the dwelling of that person, the statute allowing the name of a lodger, in the same building, to be stated as the owner." The case did not turn upon this question ; but it seems quite clear that if the building had, in fact, been burned to a sufficient extent to constitute arson, the offence would have been held properly charged.

These cases are sufficient to justify the construction of the statute contended for by the people, and it is manifest from the nature of things, that such construction ought to be upheld in cases like this ; otherwise any occupant of an apartment in a tenement-house by causing the fire to be set in the night on his own premises, so as to break out in the absence of all persons from such apartments, would not be guilty of arson in the first degree, although the tenement-house and all its other numerous occupants were destroyed by the fire. What the statute means to protect is a building or edifice, occupied for the purpose of lodging therein, against nocturnal fires, dangerous to the lives of such lodgers. It is plainly manifest that where fire is

set to such a building the danger is shared by every person within it.

The really most important question in this case is, whether there was evidence against the accused sufficient to justify a conviction. He was convicted as accessory before the fact. The evidence against him was purely circumstantial. We have examined it with great care, and have reached the conclusion that it was sufficient to justify the court in submitting the question of the prisoner's guilt to the jury.

The Court of Appeals, in *The People* v. *Case* (76 N. Y., 242), went to the extremest length in interfering with the verdict of a jury in criminal cases, but we do not feel ourselves justified in applying the rulings of that case to any other, not in all respects precisely analogous. The charge to the jury was in all respects fair and impartial, and the unexplained and uncontradicted evidence leaves upon our minds, as it did upon the minds of the jury, a satisfactory conviction of his guilt. We do not feel at liberty to interfere with the verdict.

The judgment should be affirmed.

BRADY J.. concurred.

Present—DAVIS, P. J., and BRADY, J.

Judgment affirmed.