### No. 2.

### SAME agt. SAME.

APPLICATION in behalf of the prisoner for a certificate and *certiorari* to "stay judgment" on the indictment and conviction "until the decision of the supreme court shall be had upon" the "exceptions" taken during the trial.

*R. W. Peckham* and *M. D. Conway*, for prisoner.

*D. Cady Herrick*, district attorney, and *J. A. Delehanty*, assistant district attorney, for People.

WESTBROOK, *J.* — The prisoner has been tried and convicted by the verdict of a jury of the crime of perjury. The indictment was founded upon an affidavit subscribed by the prisoner, and purporting to have been taken before Jeremiah Kieley, a commissioner of deeds in and for the city and county of Albany, on the 24th day of November, 1880, for the purpose of verifying a bill for undertaker's services and materials, in conformity with section 63, of page 881 of volume 1 of the Revised Statutes (*6th edition*). Application is now made in his behalf that sentence and judgment may be delayed for a few days, so that a bill of exceptions may be prepared and settled, to the end that when so settled and signed, a certificate may be given by the judge who presided upon the trial, or by a justice of the supreme court as prescribed by section 29, page 1030, volume 3 of the Revised Statutes (*6th edition*).

The section to which reference has just been made provides : " Such bill of exceptions being settled and signed, if the circuit judge who tried the cause, or a justice of the supreme court shall certify on such bill, that, in his opinion, there is probable cause for the same, or so much doubt as to render it expedient to take the judgment of the supreme

The People agt. O'Reilly.

court thereon, such certificate, on being filed with the clerk of the court, shall stay judgment on such indictment until the decision of the supreme court be had upon such exceptions."

The granting of the certificate throws upon the district attorney the labor of removing the case into the supreme court by a writ of *certiorari*, and then pressing the case to a decision and conclusion (*Vol. 3 of R. S.* [*6th ed.*], *p.* 1031, *sec.* 33).

The language of section 29 and the effect of the certificate impress upon us the conviction that the course suggested by the counsel for the prisoner should not be adopted unless a doubt exists in our own mind as to the correctness of some ruling made by us during the progress of the trial. A knowledge that we are not infallible, and that in the hurry of a trial a mistake is liable to occur, has led us, during the few hours which a suspension of business in court has given, to re-examine the point upon which the alleged error is predicated.

That the apparent affidavit was true was scarcely pretended upon the trial. Confessedly, the prisoner claimed for services he had never rendered, and for others which, though rendered, insisting that they had not been paid for, he demanded compensation, when, beyond any doubt or cavil, he had been fully paid. The defense was not placed upon the ground of either the truth of the statement which the prisoner had made, or of any mistake honestly committed; but it was insisted and argued in his behalf that, probably with full knowledge that the account, which he had pretended at least was verified by affidavit, was wrong and false in part, he had caused not a real, but a sham affidavit to be made in order to secure thereby the sum justly and honestly due to him from a body which, as was claimed he knew, always cut down charges without regard to justice, and from whose award there was no appeal.

It is claimed that the court erred in the law governing such a defense, and in its definition of a legal and binding oath.

The People agt. O'Reilly.

The examination of the point requires a statement of what the court did say to the jury, and as accuracy in such statement is important, it is now given in its very words as recorded by its official stenographer.[*]

To the extract just given, in order to present with still more sharpness our instructions to the jury, it should be added that, on the request of the counsel for the prisoner, the court expressly charged that if the jury came to the conclusion there was no intent on the part of the prisoner in what he did to swear to his affidavit, then no oath was administered and their verdict should be one of acquittal.

Whatever doubts may have existed in our mind as to the correctness of a legal proposition formulated during a trial without much, if any, opportunity for examination and reflection, such doubts, after further thought, are entirely dissipated, and we now feel confident that we have not erred. Very little need be added to the reasoning given in the charge, and we, therefore, will only refer to a few authorities establishing principles on which the charge rests.

Before doing so, however, it is proper to state that we fully

---

[*] Where a party appears before an officer duly authorized to administer oaths, and hands to such officer a declaration in writing, subscribed by him, in which declaration it is stated in substance that the party subscribing the statement verifies the same by his oath, with the intention thereby of having such officer understand that he, the party, does in fact declare to him, the officer, by written and printed words, that he verifies the same by his oath ; and also with the intend to have the officer subscribe his certificate, that the statement has thus been verified, and the officer believing that the party intends to declare and does declare on oath, by written and printed words, that he verifies the statement, affixes his name to the jurat; and then after such affixing delivers it to the party, who uses it for the purpose of inducing the official action of some body or court authorized to act thereon, then an oath has been in fact administered, although the words of the oath have not been audibly uttered.

To apply that rule, which perhaps is too general for you to bear in mind in your retirement, the court further charges you, that if O'Reilly delivered the bill and the affidavit to Kieley to have the same certified by Kieley as sworn to before him, intending thereby to declare to said Kieley that by oath he intended to verify, and did verify, the statement subscribed by

The People agt. O'Reilly.

agree with the propositions enunciated by the court of appeals in *Case* agt. *The People* (76 *N. Y.*, 242), and with the conclusion there reached. We certainly did not intend to vary in the least from any position therein maintained, not only because the opinions of that court should control our judgment, but also because the entire reasoning of the court, as given by judge MILLER, commends itself most fully to our own convictions. The principle determined in that case is that there can be no valid oath administered unless the officer and the affiant are together. The communication must be direct between the magistrate and the party, and no signing of a pretended deposition by an individual, and the conveyance thereof by a third person to an officer, who is in a different room, or perhaps in a different building, for the purpose of affixing to the jurat his official signature, is even an approximation to that which the law requires. Personal contact and communication between the officer who administers the oath and the individual who proposes to take it are so clearly requisite that no argument is necessary to prove it. When, however, the officer and the would-be affiant are face to face,

---

him, and the officer regarding him as so declaring on oath, signs the certificate and the jurat for the purpose of evidencing the verification, and then delivers it to the party in that form verified, and the party presents it in that form and shape to the board of supervisors for the purpose of procuring the audit of the bill, then I charge you that the oath has been duly and lawfully administered. I do not think this rule is at all unreasonable.

For the purpose of making it clear that this is reasonable and proper, let me say a few words more. It will be conceded that if a party goes before a magistrate and declares to him in words, "I swear to the affidavit by me subscribed," and requests the officer to append to it his certificate that he has taken a proper, valid and binding oath, then such party has taken a valid and binding oath, because he has audibly proclaimed in language his intention so to do. Now that which can be proclaimed in spoken, uttered words, may be as well and as forcibly proclaimed by one to another by written and printed words. Suppose, for example, that the person about to take an oath was deaf and dumb; he could not speak, he could not hear the spoken words of another, but he could read and write, and read writing and printing — suppose such a

The People agt. O'Reilly.

and when communication is thus clearly directly established between them, thought and intent can be expressed by the one to the other, either in uttered words or in writing, and when conveyed in either way the one is as clear and as forcible as the other. An audible declaration by the affiant to the officer that he verifies a written statement by his oath, which is accepted by the latter as such, is clearly a valid administration of an oath; and a written statement, subscribed by the party and declaring the same thing, made with the intent to verify by oath, and so accepted, understood and acted upon, must be equally valid.

In disposing of the question we are considering it should be remembered that our statutes require no particular form of an oath. In *The People* agt. *Cook* (14 *Barb.*, 259), MASON, P. J. (*page* 310), said : " The common law doctrine is that an oath taken in any form to which the affiant assents, and by which he intends to be bound, is, if administered by a competent tribunal, a valid oath ( *Whart. Am. C. Law*, 185 ; 16 *Pick.*, 156 ; *Roscoe's Crim. Ev.*, 130 [*ed.* 1846] ; 6 *Carrington & Payne*, 571 ; *Cowen & Hill's Notes*, 706, *page* 494).

person should appear before a magistrate for the purpose of administering an oath, and presents to him a written affidavit duly subscribed, the language of which is to the force and effect that the party has been duly sworn, and by his oath verifies the statement, and without uttering a word he points to the language of the affidavit and points to his signature, and then points to the certificate at the left, for the purpose of thereby indicating to the officer that he thereby authorizes him to certify that he has then been sworn, would any one doubt that would be a valid oath? That the minds of the officer and party had completely met? That there was an intention upon the part of the one to swear and of the other to administer the oath? And that, if it was then returned by the officer to the party and the party used it, that in the act of using it and giving it to the world as genuine, he was proclaiming the validity of the oath, and that in fact a good and lawful oath had been administered? ·

There can be, it seems to me, no doubt in the case we have supposed. Let us then apply the illustration to this. If we are correct in our supposed case then we have demonstrated that spoken words are not necessary to a valid oath, and, therefore, if a party who can read and write and also speak goes to an officer with a declaration subscribed by him, which

It is said, however, that our statute (2 *R. S.*, 407, *sec.*, 82) has prescribed the form of administering the oath, and that it requires all persons to be sworn by laying their hands upon and kissing the gospels, unless the witness expresses a different desire.

"It was held, however, in the case of *The State* agt. *Whittenhurst* (2 *Hawks*, 458), that any form pointed out by the witness is binding, and he may be indicted for perjury upon it; and, they add, so he may, though he omit to make known his scruples of conscience and be sworn in the common law form, or any other binding form.

"They add, by submitting to be sworn in the common form, he makes his election, and is estopped to set up his scruples (*Cowen & Hill's Notes*, 705). It is also said in the case of *The Rex* agt. *Brodribb*, (6 *C. & P.*, 571) that if the oath administered was intended to be administered as binding, and was so received by the party, it is equally within the statute against perjury, whether the book on which he was sworn was a Testament or not."

When the same case reached the court of appeals (8 *N. Y.*,

declaration declares that the party has been sworn and does swear to the truth of the statement, and delivers it to the officer for the purpose of having the officer read the declaration and for the further purpose of having him understand that it is upon oath, as such party declares to him, and then asks the officer to subscribe his name to it, because he has sworn to it, is not that a valid and binding oath? If you analyze the language of the affidavit, if you interpret the meaning of the meeting and all that took place, is there not in fact and in truth as formal and as complete an oath as could be administered by spoken words, if that was the intent and design of both the parties? Would it do, gentlemen, for us to proclaim any other doctrine from this court room than this? Grant that oaths are sometimes carelessly administered, would it do to proclaim to the world that when an oath has been thus carelessly, if you please so to call it, administered, though apparently fair upon the paper, and a party comes into this court room, presenting it as a valid oath, and asks the action of this court on it and this court acts upon the faith of it — would it do, when the party is called upon to respond because of its falsity, to permit him to escape upon the ground that there was no oath, because there were no spoken and uttered words when such oath was administered?

67) the court, per WILLARD, J. (*pages* 84, 85), said: "The oath in this case, though irregularly administered, was a valid oath. If the party taking it makes no objection to the mode of administering it at the time, he is deemed to have assented to the particular form adopted, and is liable to all the consequences of perjury as if it had been administered in strict conformity to the statute (*C. & H. Notes*, 705; *id.*, 1503; *Cody* agt. *Norton*, 14 *Pick.*, 236; *Commonwealth* agt. *Bayzell*, 16 *id.*, 153)."

This same doctrine is also contained in *Wharton's Criminal Evidence* (8*th ed., sec.* 354); in *State* agt. *Norris* (9 *N. H. R.*, 96), in which (*page* 102), the court say: "The term, corporal oath, must be considered as applying *to any bodily assent* to the oath of a witness;" in *State* agt. *Whittenhurst* (2 *Hawks' Rep.*, 458); and in 2 Broderip & Bingham, 284.

Assuming, then, that the law is, that no particular form is required for the valid administration of an oath, what facts were given to the jury to consider? 1st. The meeting of the prisoner and the officer for the avowed and declared purpose of verifying the account in the manner prescribed by statute. 2d. A declaration, partly printed and partly written, subscribed by the prisoner, in which he distinctly states he has been "duly sworn" and on his oath deposes. 3d. The delivery of the declaration thus subscribed to the commissioner, who reads it, and thereby is fully informed of what the prisoner states to him by written and printed words. 4th. The acceptance by such commissioner of such written and printed statement as a declaration and oath before him, expressed to the party deposing by the officer's signature to the jurat and its delivery by him, in its completed form, to the prisoner. And 5th. Its acceptance by the prisoner, as a formal and completed affidavit prescribed by law, proven by its delivery to the board of supervisors for action thereon.

With these facts properly deducible from the evidence, we are clear that no error was committed in the charge, and that the verdict of the jury was amply justified and required by

the testimony. We are, therefore, constrained to refuse the certificate asked for, and to require that the case should be removed into the supreme court in the usual way, by writ of error after judgment.